# Grant *versus* Henry Clay Coal Company.

1. The copy of a statute of another state certified by the secretary of state under its seal is properly certified according to the Act of Congress of May 26th 1790, and is admissible in evidence.

2. One chapter of General Statutes of Massachusetts duly certified referred to another statute: *Held*, that it was admissible in evidence without including in the certificate the act referred to.

3. To make an act containing different subjects admissible in evidence, it is not necessary the whole act should be certified ; it is sufficient to produce those sections relating to the subject-matter.

[Grant v. Henry Clay Coal Co.]

4. The books of a corporation proved by its clerk are competent evidence to prove the acts necessary to be done to show its existence.

5. Where a secretary of state certifies—under the seal of the state—a paper from his own office, it is not necessary that he should certify that "the attestation is in due form."

6. The courts of Pennsylvania are bound by the decisions of the courts of a sister state in relation to the organization of a corporation under the statutes of that state.

7. A corporation of a sister state owning mining leases in Pennsylvania, sold coal to the defendants in this state, through an agent here, known to them to be such agent: *Held*, in a suit by the corporation for the price of the coal, the defendants could not raise the question of the plaintiff's right to hold such leases.

8. The inquiry into such right could be made only by the Commonwealth.

9. Adle v. Sherwood, 3 Whart. 481, followed.

January 25th 1875.   Before AGNEW, C. J., SHARSWOOD, WILLIAMS, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, of *Northumberland county :* Of September Term 1873.

This was an action of assumpsit brought to the August Term 1868, of the court below, by the Henry Clay Coal Company against William T. Grant and Thomas D. Grant, trading as Grant & Brother.

The defendants pleaded *non assumpserunt* and payment, &c., and set-off; they also pleaded *nul tiel corporation.*

The plaintiffs in this case were a corporation of the state of Massachusetts ; they owned extensive leases of coal mines in Northumberland county, Pennsylvania.   Their claim was for a quantity of coal furnished to the defendants at Shamokin.   The defendants alleged that the contract between plaintiffs and themselves was that the plaintiffs should give the defendants the exclusive sale of their coal *westward* from Shamokin, at such prices that the defendants could realize 25 cents per ton on the sale of the coal, and sell it at the same price as the plaintiffs sold to the trade, but that the plaintiffs sold coal westward to Thomas Baumgardner and others.   The plaintiffs alleged that their contract with defendants was that they should have the sale of the coal westward exclusive of every one except Baumgardner.   Whether there was this exception, was the question of fact in the case, as to which there was much evidence on both sides on the trial of the case October 31st 1872, before Rockefeller, P. J.

The questions of law related principally to the rulings of the court on offers of evidence on the issue raised by the plea of *nul tiel corporation.*

The plaintiffs offered in evidence a copy of chapter 61 of the General Statutes of Massachusetts, passed December 28th 1859; the chapter is entitled : " Of corporations organized under general statutes," &c.

Sect. 1, provides that three or more persons, who had asso-

30 P. F. SMITH—14

[Grant *v.* Henry Clay Coal Co.]

ciated themselves by articles of agreement in writing for carrying on any mining business (or other business specified in the chapter), and should have complied with the provisions of the chapter, should be a corporation under the name assumed in their articles.

Sect. 4. If there be doubts whether such corporation be legally organized, the stockholders at a meeting duly called may vote to confirm the organization, &c., and by so doing and depositing one copy of such vote with the clerk of the city or town where it may be located and one with the secretary of the Commonwealth, such corporation should be held legal, as if the original organization had been legal.

Sect. 5. Every corporation so organized and its officers and stockholders shall have all the powers and privileges and be subject to all the duties, restrictions and liabilities set forth in chapter 60, so far as they are applicable, except sect. 23 of said chapter ; and the president, directors and treasurer shall be chosen according to the provisions of said chapter.

Sect. 7. Such corporation may carry on its business beyond the limits of the state and may there hold any real or personal estate necessary for conducting it.

Sect. 8. Before commencing business the president, treasurer and a majority of the directors are to sign, swear to and publish in a newspaper in the town or county where the corporation is situated and deposit with the secretary of the Commonwealth a certificate setting forth its corporate name and purpose and other matters, and file a copy with the clerk of the city or town where it is situated, to be recorded by him in a book kept for the purpose.

Other sections of this chapter refer to matters to be done in accordance with certain sections of chapter 60.

The certificate to the copy offered in evidence was :—

" Commonwealth of Massachusetts, Secretary's Department.

" I, Oliver Warner, Secretary of the Commonwealth of Massachusetts, hereby certify that the foregoing is a true copy of chapter 61 of the General Statutes of this Commonwealth, enacted by the legislature and approved by the governor thereof on the 28th day of December, A. D. 1859.

"In witness whereof I have hereunto set my hand and [SEAL] caused the seal of the Commonwealth to be hereunto affixed at the city of Boston, this 25th day of October, A. D. 1870.

" OLIVER WARNER, Secretary."

The defendants objected to the offer, because the paper could not be understood without the production of the other acts referred to in it, they being made by the reference, parts of the statute offered in evidence.

The offer was received and a bill of exceptions sealed for defendants.

[Grant *v.* Henry Clay Coal Co.]

The plaintiffs called B. A. G. Fuller, who testified that he had been treasurer of the corporation since its organization and that a book which was shown him was the record book of the corporation. They then offered the record of the organization of the plaintiffs, to be followed by a certificate under the great seal of the Commonwealth of Massachusetts, that they were formerly duly organized, with a certificate of the secretary of the Commonwealth of Massachusetts, under the great seal of that Commonwealth; that it was a true copy of the original paper filed; with a certificate of the mayor and city clerk of Boston that the paper to which the certificate was attached was a true copy of the original certificate of the organization of the plaintiffs filed amongst the record of joint stock companies and that the seal to the certificate was genuine.

The record showed:—

Minute of articles of association setting out that the subscribers associated themselves under chapter 61 of the General Statutes of Massachusetts in the formation of a corporation, to be styled the "Henry Clay Coal Company," for the purpose of procuring coal leases in Pennsylvania, making improvements, mining, &c., and transporting coal, &c., the corporation to be located in Boston; the articles were dated January 28th 1864. The articles were signed by B. A. G. Fuller and a number of others. Also, copy of notice of same date from Fuller, as one of the signers of the articles to the other signers, notifying them of a meeting to be held on the 5th of February then next to organize the company, with acknowledgment of service by each member of the association.

Also a paper, as follows:—

"CERTIFICATE, FEBRUARY 25th 1869.

"The undersigned, president, treasurer, and a majority of the directors of the *Henry Clay Coal Company*, a corporation organized under the General Statutes of the Commonwealth of Massachusetts, hereby certify that the corporate name of the company is the Henry Clay Coal Company; its purposes are to procure a lease or leases of coal lands in Pennsylvania; erect improvements thereon; *mine, prepare* and deliver coal therefrom; transport and sell coal; underlet, and do all things legal and proper in carrying on the business of mining and selling coal; the amount of its capital stock is three hundred thousand dollars; the par value per share is one hundred dollars; the amount paid in is three hundred thousand dollars; the place of business is Boston.

Boston, April 13th 1874.

> Chas. A. Lombard, President.
> Benj. A. G. Fuller, Treasurer.
> Chas. A. Lombard, ⎫ Majority
> R. S. Denny,     ⎬    of
> S. P. Shaw,      ⎭ Directors."

[Grant *v.* Henry Clay Coal Co.]

" Commonwealth of Massachusetts,
*Suffolk, ss:* April 13th 1874.
" Then the said Charles A. Lombard, Benj. A. G. Fuller, Samuel P. Shaw and R. S. Denny, president, treasurer and a majority of directors of the Henry Clay Coal Company, made oath to the truth of the foregoing statement by them subscribed.  Before me,
CHARLES L. HANCOCK,
Justice of the Peace.

" Secretary's Department,
Boston, February 25th 1869.
" A true copy of the original certificate filed and recorded *in this office, April 14th* 1874.     Attest,
*Witness the seal of*                CHAS. W. LOVETT,
Deputy Secretary of
[SEAL.]                       the Commonwealth."
*the Commonwealth."*

On the paper as offered in evidence the words appearing above in *italics* were interlined or written over erasures, &c.

Also a similar paper, dated April 13th 1864, to which was appended :—

" April 14th 1864.  Rec'd, ent'd and ex'd, per Samuel F. McCleary, city clerk," with certificate of McCleary as city clerk under the seal of the city, dated October 12th 1870, that it was a true copy from the records of joint stock companies ; and a certificate of the mayor of Boston, under the seal of the city, certifying that McCleary was clerk of the city duly authorized to certify the records of the city, &c., that the signature was genuine and the seal that of the city of Boston.

The defendants objected to the minutes because the record was not proved by the secretary, although he was shown to be alive; because there was no evidence to show when and by whom the entries were made ; to the certificate February 25th 1869, because it is not shown by what authority the original was filed in the secretary's department, because it did not purport to be a record and was not such a record as may be proven by the certificate and seal of another state ; because there are manifest erasures all over the face of the paper as well as in material parts of it ; to the certificate of the mayor and clerk of Boston, because no law is shown to authorize such certificate to be made ; because such certificate cannot be given in evidence in Pennsylvania and give the papers no validity in Pennsylvania.

B. A. G. Fuller, recalled, said : " I procured the certificate dated 25th February 1879, from the office of the secretary of state in the city of Boston.  The erasures were all made before the paper was certified by the secretary, and before the seal of state was on.  The words of the certificate were all put there by the

proper officer. The paper is in the same condition that it was in when I received it at the office of the secretary of state."

Being cross-examined he said : " I think it had the seal of the state to it when I took it away the first time. I cannot say that it was re-stamped when I went back the second time. I cannot tell what the words were that were originally written in where the erasures are. The paper is just as I received it from the officers at the office of the secretary of state. I noticed an erasure when I got the paper at the office. The officer in the secretary of state's office wrote the certificate. I have no recollection of seeing the original paper drawn. I got the paper at the office, and then went back afterwards and got the certificate made to it. I do not know whose handwriting the certificate is in, that is, I am not personally acquainted with the party who drew it. I do not know whether there was anything written in underneath those words or not before they were written in there. After some few terms ago of this court, I went to the secretary's office in Boston and got the certificate put on."

Being re-examined he said : " This book, containing the minutes which I before referred to, contains the original articles of association and the minutes of the proceedings of the corporation. The first and second pages contain the original articles of association of the company. I was the original or first secretary of the company. These minutes are in my handwriting. They contain a record of the election of officers." Paper purporting to be a certificate of the mayor and clerk of the city of Boston shown witness. He said : " The seal thereto attached is the seal of the city of Boston. The names to the articles of association, on pages one and two of minute book, contain the genuine signatures of the original corporators."

Again cross-examined he said : " The names were all signed in my presence. The articles of association are in my handwriting. I know this is the seal of the city of Boston. I saw this seal affixed by the city clerk in the clerk's office of the city of Boston at the time of the date of the certificate."

The defendants renewed their objections to the offer ; the objections were overruled and a bill of exceptions sealed for the defendants.

The plaintiffs gave evidence that John B. Douty was their agent for the Henry Clay Colliery, that he had sold the coal for which the suit was brought to defendants in December 1867 and January 1868 at prices agreed on ; being those in the accounts sued on.

T. D. Grant, one of the defendants, testified that he made a contract with Douty, agent, on the 9th of January 1866, for the exclusive sale of coal west from the Henry Clay Colliery ; the defendants had been buying coal from that colliery during the year 1865 ; that Douty accepted propositions made by witness to give

[Grant *v.* Henry Clay Coal Co.]

defendants the exclusive sale west of the Henry Clay coal; Douty was to sell this coal to plaintiffs for 25 cents per ton less than he would sell to the trade. Witness testified that the plaintiffs had sold coal to Baumgardner and others to go west.

Defendants gave evidence also that they had issued a card, signed with Douty's name by his authority, stating that he had given them the exclusive right of the Henry Clay coal west.

For the plaintiffs in rebuttal, Douty testified that the bargain was, that he sold to defendants all the coal that went west but Baumgardner's; the defendants and Baumgardner agreed that he was not to touch any of defendants' territory west of the river, and defendants were not to sell any coal east of Harrisburg down. This arrangement was made in consequence of the complaint of both parties that Douty had sold to each more than to the other.

The evidence on both sides tended to show that the defendants had had two or three years' course of dealing in coal with Douty as agent for the plaintiffs.

The defendants' points were:—

1. The plaintiffs have not established by sufficient legal evidence their existence or right to sue as a corporation; and that they cannot sustain this action under the pleadings and evidence in the case.

2. If the court should decline answering the above point in the affirmative, then the defendants ask the court to instruct the jury, that the plaintiffs not having been incorporated by the state of Pennsylvania, or under or by virtue of the laws thereof, had no power or authority to hold lands nor carry on the business of mining or selling coal in the years 1866, 1867 and 1868, in this state.

3. The plaintiffs cannot in a suit brought in their alleged corporate name, enforce a contract alleged to have been made in Pennsylvania in relation to the sale and delivery of any portion of the coal mined or alleged to have been mined by the plaintiffs in Pennsylvania, and that therefore this action cannot be sustained.

The court refused the first and third points without qualification: and in answer to the second point said:—

"I answer this point in the negative. It may be that these plaintiffs had no right, power or authority to hold lands in this state, but as I understand this and defendants' third point, it is intended to raise the question whether the plaintiffs, having lands consisting of a colliery in this state, can with it carry on the business of mining or selling coal, and if not, then can plaintiffs recover in an action for the price of coal sold and delivered? I think the defendants cannot question this right in this action, so as to defeat the claim of plaintiffs for coal sold and delivered to them under their contract, and therefore I do not affirm this point."

The verdict was for the plaintiffs for $3274.53.

The defendants took a writ of error and assigned for error, the

[Grant v. Henry Clay Coal Co.]

admission of the evidence objected to, and the answers to their points.

*L. H. Kase, W. I. Greenough* and *J. B. Packer*, for plaintiffs in error.—Referring in one statute to another makes the latter part of the former, and therefore the exemplification should be of both statutes : 1 Greenl. Evid., sect. 506 ; Susquehanna & W. Railroad Co. *v.* Quick, 18 P. F. Smith 189. The minute-book, although evidence between themselves, was not evidence against strangers : Commonwealth *v.* Woelper, 2 S. & R. 29 ; 1 Greenl. Evid., sect. 493 ; Phillips on Evid. 319. A certificate of matters of record by the secretary of another state under the seal of state is evidence of such record, and is to be admitted for what it is worth, to prove what the paper itself would prove, but the officer giving the certificate cannot extend its effect to other matters : 1 Greenl. Evid., sect. 498. Alterations in public documents are governed by the same rules as alterations in deeds : 1 Greenl. Evid., sect. 565. No foreign corporation shall hold real estate in this Commonwealth unless specially authorized by law : Act of April 26th 1855, sect. 5, Pamph. L. 329, 1 Br. Purd. 291, pl. 56 ; Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons 233 ; Manufacturers' & M. S. & Loan Co. *v.* Conner, 5 Phila. R. 18. The contract being made with this foreign corporation which was illegally holding lands, it was itself illegal and could not be enforced : Swan *v.* Scott, 11 S. & R. 164 ; Reading Ind. Manuf'g Co. *v.* Graeff, 14 P. F. Smith 402 ; Maybin *v.* Coulon, 4 Dall. 298 ; Seidenbender *v.* Charles, 4 S. & R. 159 ; Columbia Bank & Bridge Co. *v.* Haldeman, 7 W. & S. 233 ; Holt *v.* Green, 23 P. F. Smith 198 ; Coppell *v.* Hall, 7 Wall. 558 ; Bank of Virginia *v.* Adams, 1 Parsons 534 ; Morris *v.* Stevens, 6 Phila. R. 488 ; Allegheny Co. *v.* Cleveland & Pittsburg Railroad Co., 1 P. F. Smith 228.

*G. W. Zeigler, S. P. Wolverton* and *J. W. Comly*, for defendants in error.—An exemplification of the part of an Act of Assembly bearing upon the issue trying is all that it is necessary to give in evidence : Adle *v.* Sherwood, 3 Whart. 481. The record of the plaintiffs' organization was sufficiently proved, having been produced by the proper custodian and proved by one knowing the fact that it was such record : Devling *v.* Williamson, 9 Watts 311 ; Dennison *v.* Otis, 2 Rawle 9. By the laws of Massachusetts a corporation exists under chapter 61 so as to contract, &c., as soon as its first meeting has been held and its officers chosen : Hawes *v.* Anglo-Saxon Pet. Co., 101 Mass. R. 385 ; Merrick *v.* Reynolds E. & G. Co., Id. 381. The filing of the certificate with the mayor of Boston was unnecessary, and the copy, if irrelevant, was harmless ; its admission was therefore no ground for reversal : Girard F. & Ins. Co. *v.* Marr, 10 Wright 504 ; Eckert *v.* Cameron, 7 Id.

[Grant *v.* Henry Clay Coal Co.]

120. The defendants cannot in a collateral proceeding question the right of the plaintiffs to exercise privileges in Pennsylvania; none but the Commonwealth can question it: Coil *v.* Pittsburg F. Coll., 4 Wright 439; Cochran *v.* Arnold, 8 P. F. Smith 399; Farnham *v.* Del. & Hud. Canal Co., 11 Id. 265; Pittsburg & Conn. Railroad Co. *v.* Allegheny, 13 Id. 127.

Mr. Justice PAXSON delivered the opinion of the court, February 8th 1875.

We have no difficulty in deciding that the certified copy of chapter 61 of the General Statutes of the Commonwealth of Massachusetts, enacted by the legislature, and approved by the governor thereof, on the 28th day of December 1859, was properly received in evidence. The said act was certified by the secretary of state, under the seal of the Commonwealth. This is in strict compliance with the Act of Congress of the 26th of May 1790, sec. 1, Brightly's Digest 265, pl. 9, which provides that " the acts of the legislatures of the several states shall be authenticated, by having the seal of their respective states affixed thereto." The objection was made to the admission of this copy, that it is only a chapter or part of a statute and that as the whole was not certified, the portion offered was not evidence. We do not regard the objection as well taken. There is no evidence that the matter certified is only a portion of an act, except what may be drawn inferentially from a reference in the fifth section to another distinct act, as chapter sixty. The fact that one Act of Assembly refers to another act, does not render the former act incomplete in itself, nor make it necessary to certify the act to which such reference is made. The act in question provides for the organization of corporations in Massachusetts, and the reference in sect. 5th to chapter 60, shows it to have no connection with the organization of corporations, but to relate to matters subsequent thereto. It was held in Adle *v.* Sherwood, 3 Whart. 481, that if an Act of Assembly contains different subjects, it is not necessary that the whole act should be certified in order to make it admissible in evidence. It is sufficient to produce those sections which relate to the matter in question. The admission of the Massachusetts statute referred to in evidence, was followed by proof of the organization of the plaintiffs below, thereunder. The articles of association, with the signatures of the corporators thereto, and the notice of the time and place of their first meeting, were duly proved. The minute book of the company was properly received for the purpose of showing its organization. It is said in Angell & Ames on Corporations 573, that " to prove the acts of a corporation necessary to be done in order to their corporate existence, the books of the corporation proven by the clerk or secretary, are competent evidence."

Up to this point there seems no difficulty. Then comes a cer-

tificate of the president, treasurer, and a majority of the directors, certifying to the name of the company, its objects, its organization under the laws of Massachusetts, the amount of capital stock and par value of its shares, the amount of capital actually paid in, and the location of its place of business. This certificate is evidently in compliance with the 8th section of chapter 61. One copy thereof appears to have been filed in the office of the mayor of Boston, and another copy in the office of the secretary of the Commonwealth of Massachusetts. A copy from each office was offered in evidence, and objected to upon the ground that it was not properly certified. The certificate of 25th of February 1869 was objected to, upon the further ground that it contained erasures upon its face. The latter objection is disposed of by the testimony of Mr. Fuller. He says : " The paper is just as I received it at the office of the secretary of state. I noticed an erasure when I got the paper from the office." Nor is the remaining objection to this paper well founded. It appears to be certified in substantial compliance with the requirements of the first section of the Act of Congress of 27th of March 1804, Brightly 266, pl. 10. It is true there is no certificate that the attestation is in due form. It is to be remembered, however, that it is the secretary of the Commonwealth who certifies. He does so under the seal of the state ; and that portion of the Act of Congress which requires that officer to certify that " the attestation is in due form," would not seem to be applicable to a case where the secretary himself certifies a paper from his own office. It would be an unnecessary adherence to the letter of the statute to require him to certify that his own certificate is in due form.

The certificate of the 25th of February 1869, having been properly admitted, the certificate of the mayor of Boston became unimportant. The testimony of Mr. Fuller, the secretary of the company, that the parties signed the articles of association and organized thereunder; the minutes of the company, proved by him to be in his handwriting, together with the copy of the declaration, filed in the office of the secretary of the Commonwealth, certified by that officer under the seal of the state of Massachusetts, sufficiently established the existence of the corporation. " A corporation exists under the General Statutes, chap. 61, sect. 1, so as to be able to contract debts as soon as its first meeting has been held and its officers have been chosen, if not immediately upon the signing of the articles of association :" Hawes *v.* Anglo-Saxon Petroleum Company, 101 Mass. 385. The making of the certificate required by the General Statutes, chap. 61, sect. 8, is not a condition precedent to the existence of a corporation under that chapter : Merrick *v.* Reynolds Engine & Governor Co., 101 Mass. 381. We are bound by the decisions of the courts of Massachusetts, upon a matter relating to the organization of a corporation under

[Grant *v*. Henry Clay Coal Co.]

the statutes of that state.   It was wholly unnecessary to give in evidence the certificate of the mayor of Boston, and its admission by the court, even if erroneous, did not injure the plaintiffs in error.   This point is purely technical.   There was evidence that the plaintiffs in error knew that Mr. Douty was the agent of the Henry Clay Coal Company ; that they dealt with him as such agent for about two years, making monthly settlements for the coal received from him.   Having dealt with the defendants in error as a *de facto* corporation, there is little merit in the defence now taken, that they were not duly incorporated, and had no right to sue for the coal which it is admitted they delivered.

Nor is there any question raised upon this record as to the right of this company, as a foreign corporation, to hold real estate, or even mining leases, in this state.   If the Commonwealth has any interest in such inquiry, it can be made by her proper officer.   It is a matter with which the plaintiffs in error have no concern.

It is unnecessary to notice any of the other questions raised by the assignments of error.   With the failure of their plea of *nul tiel corporation*, the case of the plaintiffs in error crumbles to pieces.

Judgment affirmed.