BLODGETT et al. v. LANYON ZINC CO.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1903.)

No. 1,749.

1. FOREIGN CORPORATION—CONTRACTS—RIGHT TO HOLD REAL ESTATE.
    In the absence of prohibitive legislation, a corporation may contract, acquire, hold, and convey real estate as fully in another state as in the state of its incorporation.

¶ 1. See Corporations, vol. 12, Cent. Dig. § 2581.

2. SAME—FAILURE TO COMPLY WITH STATUTE—VALIDITY.

In the absence of an express provision of statute to the contrary, the innocent acts and contracts of a foreign corporation, which has failed to comply with the statutes permitting it to do business in the state where the contracts are made and the acts done, are valid and enforceable, because it is not the intent of the authors of such laws to strike down contracts or acts in performance of them that are not evil in themselves.

3. SAME—PROHIBITION TO MAINTAIN ACTIONS IN STATE COURTS—RIGHT TO SUE IN FEDERAL COURTS.

The prohibition by a state of the maintenance of actions in its courts by a foreign corporation does not prohibit or limit the right of that corporation to maintain such actions in the national courts, nor does it forbid the corporation from defending actions in the state courts.

4. LEASE—CONSTRUCTION—PAYMENTS.

In a lease for 10 years, with a stipulation that in case no well was sunk within 2 years it should become void unless the lessee should elect from year to year to continue it by paying $40 each year, it is not essential that the $40 should be paid before the commencement of the year, but the payment may be made at any time during the year.

5. ESTOPPEL—PERFORMANCE OF CONTRACT—FORFEITURE FOR DELAY.

The grantor of an option, who prevents its exercise within the time specified in his grant, may not take advantage of the failure of its timely exercise, but must give a reasonable time therefor after the obstruction he interposed is removed.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Kansas.

John F. Thompson and Stephen H. Allen (William H. Thompson and Otis C. Allen, on the brief), for appellants.

Charles E. Benton and Altes H. Campbell (John F. Goshorn and J. B. F. Cates, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree which dismissed a bill exhibited by Mary Blodgett, Mary K. Hackney, Lewis E. Hackney, and James Q. Blodgett to avoid a lease made by Mary K. Blodgett, the owner of the life estate in the 160 acres described therein, upon two grounds: (1) That the Lanyon Zinc Company, a corporation and the owner of the lease under properly executed conveyances from the lessee and its grantees, has no corporate existence, nor power to do business, nor right to hold real estate, in the state of Kansas, because it has failed to comply with the laws of that state regulating foreign corporations and the method by which they may be permitted to do business in Kansas; and (2) that the zinc company has failed to make its election to continue the lease in force from April 10, 1899, to April 10, 1900, by paying to the complainant Mary Blodgett, or depositing to her credit in the Bank of Allen County, the sum of $40, as stipulated by the terms of the lease.

The proof at the hearing failed to sustain the first reason assigned in the bill for the granting of the relief which the complainant sought. The proof was that the Lanyon Zinc Company was a corporation of the state of New Jersey; that on March 3, 1899, it purchased and obtained from the holder thereof a proper assignment of the lease

in question; that in April, 1899, it applied to the charter board of the state of Kansas to engage in business in that state; that on April 10, 1899, it paid into the office of the Secretary of State its charter and application fees; and that on January 18, 1900, the charter board of the state of Kansas issued to it a charter to do business within that state pursuant to the provisions of Sess. Laws 1898, p. 27, c. 10 (Gen. St. Kan. 1901, §§ 1259–1264). Conceding that the zinc company had not, at the time it acquired the lease, complied with the act of 1898, upon which counsel for the appellants base their objections, so that it was entitled to do business in the state of Kansas, its title to the leasehold estate was not impaired by that fact. In the absence of prohibitive legislation, a corporation of one state is authorized to receive and hold real estate in another state, and to make and execute contracts relative to both real and personal property. The presumption is that the right to contract concerning, to take, and to convey title to, real and personal property, is free. Now there is nothing in the act of 1898, nor in any of the legislation of the state of Kansas which has been called to our attention, which prohibits a corporation of another state from acquiring, holding, and conveying real and personal property in that state in the absence of a compliance with the provisions authorizing it to do business therein. The result is that the proof in this case establishes the fact that the Lanyon Zinc Company had a corporate existence and the right to hold real estate in the state of Kansas at the time it received the assignment of the lease, and at the time this action was commenced, and the first claim for the destruction of its leasehold estate is without foundation.

There is another reason assigned by counsel for the complainants for their alleged right to the relief they seek, so similar to that which has just been considered that it will be convenient to discuss it here. The lease was dated April 10, 1894. By its terms Mary Blodgett granted to the Troy Oil Company, a remote assignor of the Lanyon Zinc Company, the exclusive right for 10 years from the date of the lease to enter, and operate for oil and gas, upon a certain tract of land in Allen county, Kan., and it provided that, "in case no oil or gas well is sunk on these premises within two years from this date, this lease shall become absolutely null and void, unless the second party shall elect from year to year to continue this lease by paying or depositing to the credit of the first party each year forty dollars at Bank of Allen County, Kan., until a well is complete on these premises." The zinc company deposited the $40 at the Bank of Allen County, Kan., for Mary Blodgett for the year from April 10, 1899, to April 10, 1900, on December 23, 1899. Counsel for the complainants insist that this deposit was invalid and ineffective to continue the lease in force, because, at the time it was made, the zinc company had not acquired permission to engage in business as a foreign corporation in the state of Kansas under the act of 1898, and had failed to comply with various provisions of that statute. It will be borne in mind that, while this corporation had not received its charter to do business within that state, it had applied for it, had paid the charter and application fees into the office of the Secretary

of State, where they were held awaiting the decision of the charter board, and that it ultimately received its charter on January 18, 1900. It is also worthy of notice that there is no provision of the statutes of Kansas prohibiting a foreign corporation from doing business in that state, or declaring that any act or contract of a foreign corporation that fails to comply with the requirements to enable it to obtain permission to do business from the charter board shall avoid any of its acts or contracts. Conceding that the Lanyon Zinc Company had not complied with the corporation laws of Kansas so as to entitle it to permission from the charter board to do business in that state, no reason occurs to us why this fact should be held by the courts to avoid its contracts or the effect of its acts in performance of its agreements, in the absence of the denunciation of any such penalty for the failure to comply with its statutes by the Legislature of the state which made them. On the other hand, there are two established and familiar rules of law which prohibit the complainants from availing themselves of the failure of their lessee to comply with the statutes authorizing it to do business in the state for the purpose of escaping from the performance of their obligations under their contract. One is that the laws relative to the admission of foreign corporations to do business in the state of Kansas were not enacted for the purpose of destroying contracts or prohibiting their performance. It was not the intent or purpose of the Legislature by these laws to regulate the agreements of foreign corporations with the citizens of the state of Kansas, or to supervise or prohibit the performance of their contracts. The object of these statutes was to subject foreign corporations doing business in the state to the jurisdiction of its courts, and to the inspection and supervision of its officers, not to the end that the citizens of the state might avoid their contracts and perpetrate injustice, but to the end that justice might be administered to both the corporations and the citizens. Hence it is that the private citizen is not the party empowered to enforce these corporation laws, nor is the nullification of his contracts or of acts done in performance thereof the true remedy for their violation. The state alone is authorized to enforce them, and the ouster and dissolution of the corporation, or an injunction against its proceedings at the suit of the state, is the only remedy available. Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 Fed. 124, 134, 27 C. C. A. 73, 83; Bank v. Matthews, 98 U. S. 621, 629, 25 L. Ed. 188; Fritts v. Palmer, 132 U. S. 282, 292, 10 Sup. Ct. 93, 33 L. Ed. 317; Bank v. Townsend, 139 U. S. 67, 76, 11 Sup. Ct. 496, 35 L. Ed. 107; Thompson v. Bank, 146 U. S. 240, 251, 13 Sup. Ct. 66, 36 L. Ed. 956.

The second rule is that where a contract or an act in performance of it is not malum in se, and its invalidity is not declared as a penalty for a violation of a statute, the courts may not declare it, and thus affix a penalty not prescribed by the lawmaking power. Fritts v. Palmer, 132 U. S. 282, 293, 10 Sup. Ct. 93, 33 L. Ed. 317; Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421, 426, 48 C. C. A. 482, 487; Speer v. Board of County Commissioners, 88 Fed. 749, 758, 32 C. C. A. 101, 110; Bank v. Stewart, 107 U. S. 676, 2 Sup. Ct. 778, 27 L. Ed. 592; Gold-Mining Co. v. Rocky Mountain Nat. Bank,

96 U. S. 640, 24 L. Ed. 648; O'Hare v. Bank, 77 Pa. 96; Pangborn v. Westlake, 36 Iowa, 546.

There was no wrong in itself, there was no moral turpitude in the purchase of the assignment of this lease, or the payment of the rent due upon it, by the Lanyon Zinc Company. If there was anything wrong in either of these acts, that act became so, not because it was evil in itself, but because it was not done in compliance with the terms of the statutes of Kansas requiring foreign corporations to file their charters, to comply with the requirements which those statutes contain, and to obtain permission to do business in that state from the board appointed to consider and determine that matter. There was no provision in these statutes which inflicted the penalty of the invalidity of contracts made, or business done, without a compliance with them, nor was there any express prohibition of the conduct of such business before the laws were complied with. As there was nothing morally wrong in the acts of the appellee, as it was not the primary purpose of the statutes under consideration to invalidate such acts or contracts, and as the statutes contain neither express provision nor clear intimation that this was the intent of the legislators, it is not the province of the courts to do so. While the authorities upon this question are variant and conflicting in the state courts, the federal courts have steadily adhered to the rule, which is sustained by the better reason and the more persuasive opinions in the courts of the states, that, in the absence of an express provision of statute to the contrary, the innocent contracts and acts of a foreign corporation which has failed to comply with the statutes permitting it to do business in the state where the contracts are made and the acts are done are, nevertheless, valid and enforceable, because it is not the intent of the authors of such laws to strike down such agreements and acts when they are not evil in themselves. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Washburn Mill Co. v. Bartlett (N. D.) 54 N. W. 544, 546, 547; Wright v. Lee (S. D.) 51 N. W. 706; Fortier v. Bank, 112 U. S. 439, 5 Sup. Ct. 234, 28 L. Ed. 764; Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Chase's Patent Elevator Co. v. Boston Towboat Co., 152 Mass. 428, 28 N. E. 300, 9 L. R. A. 339; Merrick v. Reynolds Engine & Governor Co., 101 Mass. 381, 384; Enterprise Brew. Co. v. Grimes (Mass.) 53 N. E. 855, 856; National Cash-Register Co. v. Wilson (N. D.) 81 N. W. 285; Neuchatel Asphalt Co. v. The Mayor, 155 N. Y. 373, 376, 49 N. E. 1043; Simplex Dairy Co. v. Cole (C. C.) 86 Fed. 739, 741; 6 Thompson on Corporations, § 7957.

The statutes under consideration require foreign corporations seeking to do business in the state of Kansas to comply with the requirements there set forth. For a failure to comply with some of them, they prohibit the company from maintaining actions in the courts of the state of Kansas. But a prohibition of the commencement or of the maintenance of suits is not an inhibition of defending them, and the appellee is the defendant in the suit in hand. Moreover, the inhibition by a state of the maintenance of actions in its courts does not affect the right of a citizen or of a corporation to maintain them in the national courts. The jurisdiction of the federal courts was not con-

ferred, and it cannot be withdrawn or limited, by the legislation of the states. It was granted by the people through the Constitution and the acts of Congress, and an amendment of the Constitution, or an act of Congress, is requisite to destroy or diminish it. National Surety Co. v. State Bank of Humboldt, 120 Fed. 593; Darragh v. H. Wetter Mfg. Co., 23 C. C. A. 609, 615, 616, 78 Fed. 7, 13, 14.

The offense of a failure to comply with the corporation laws of the state of Kansas was an offense against the state, and not against the complainants in this suit. For that offense the state had ample remedy. It could prevent the maintenance of actions by this corporation in its courts. It could maintain a proceeding to oust it from its power to do business, and could enjoin it from carrying on business, within the state. The statutes of the state forbid the commission of many offenses, and make many requirements of individuals and of corporations. It is, however, ordinarily no defense to an action for the enforcement of a contract that the plaintiff has been guilty of larceny, burglary, or of the violation of other statutes of the state in which the suit is brought, and it is not perceived how the fact that a corporation has failed to comply with the laws authorizing it to do business in a state should constitute any valid reason why those who are under the obligations of fair contracts with it should be released from performing their agreements.

The second ground upon which the bill to avoid this lease was founded is that the Lanyon Zinc Company did not pay the $40 rental for the year from April 10, 1899, to April 10, 1900, until December 23, 1899. The lease grants the right of use of the land for 10 years, and then provides that if a well is not sunk on the premises within 2 years from the date of the lease it shall become void, "unless the second party shall elect from year to year to continue this lease by paying or depositing to the credit of the first party each year $40 at the Bank of Allen County, Kan., until a well is complete on these premises." No well has been sunk. Counsel for the appellants insist that this lease became null and void on April 10, 1899, because the $40 for the succeeding year was not paid on or before that day. They insist that this lease simply gave to the lessee the option to elect to continue it from year to year by paying the rental for the succeeding year before it commenced. But is this a fair construction of the agreement? It first grants the exclusive right for 10 years from April 10, 1894, and then provides that if a well is not sunk within 2 years from its date the lease shall become void, unless the lessee shall elect to continue it from year to year by paying $40 each year. This is not a mere grant of an option. It is a grant of the right to the use of the premises for the term of 10 years, conditioned on the payment of $40 per year after the expiration of the first 2 years. Nor is there any provision in this contract that this rental shall be paid on or before the commencement of the year to which it applies. An election from year to year, by paying $40 each year, literally means an election by paying during each year, and there is nothing elsewhere in the contract inconsistent with the words and the ordinary meaning of this provision. The general rule is that time is not the essence of a contract, unless the parties have so made it by express stipulation,

or it is apparent from the entire agreement, their relations, and the character of the rights and remedies they were limiting, that it was their intention that time should be considered material. Nothing of that character is found in the relations of these parties or in the terms of this lease, and our conclusion is that the appellee was in time to pay its rent for the year ending April 9, 1900, at any time on or before that day.

Moreover, if we are in error in our construction of this agreement, the result could not be different. If the right to continue this lease one year from April 10, 1899, was a mere option, which the appellee must have exercised on or before that day by the payment of the $40, in order to protect its right to the use of the property for the ensuing year, the appellants are in no position to take advantage of the fact that it did not make the payment. Some of them had instituted a suit in the district court of Allen county, Kan., against the Palmer Oil & Gas Company, under which the Lanyon Zinc Company held this lease, and had obtained a decree which enjoined the Palmer Company, and of course those claiming under it, from carrying out, or attempting to carry out, any of the provisions of the lease, and from exercising any right or interest in the land, or in the oil and gas beneath its surface. This injunction was granted on July 6, 1898, and it was not dissolved until November 21, 1899. One who thus prevents another from performing his part of a contract is thereby estopped from insisting that any rights were lost by such a failure to perform. Elkhart Car-Works Co. v. Ellis (Ind.) 15 N. E. 249, 250.

The truth is that there is no equity in this bill. Here is a contract free from fraud or mistake in its negotiation, execution, and performance. There is nothing in the failure of the Lanyon Zinc Company for a few months to persuade the charter board to issue permission to it to do business in the state of Kansas which perpetrated any wrong or inflicted any injustice upon the complainants. There is nothing in the fact that the appellee did not pay the $40 required for the rent of the year ending April 9, 1900, until the 23d day of December, 1899, which appeals with much force to the conscience of a chancellor, when it is remembered that it was prohibited from exercising any rights under this lease, by an injunction procured by some of the appellants, until November 21, 1899. The equities of the appellants are not superior to those of the appellee, and the parties must be left to enforce their legal rights under the contract they deliberately made.

The decree below is affirmed.

THAYER, Circuit Judge. I concur in the order affirming the decree of the Circuit Court for the following reasons:

The action is one in equity to obtain a decree canceling a mining lease and declaring a forfeiture of the same for the reasons stated in the foregoing opinion. The general rule is that courts of equity will not lend their aid to enforce forfeitures, but will leave a complainant who is insisting upon a forfeiture to enforce his rights at law, where they can usually be enforced without difficulty if a forfeiture has been incurred. Courts of equity abhor forfeitures, and will frequently

grant relief against them, whereas they will rarely, if ever, lend their aid to enforce a forfeiture.

But, aside from the foregoing view, the assignment of the mining lease to the Lanyon Zinc Company, which the complainants seek to have declared null and void, was not void, although the last-mentioned company had not, at the time the assignment was executed, taken all of the steps necessary to qualify it to engage in business in the state of Kansas. The assignment, when executed, vested in the assignee of the lease all the right, title, and interest of the assignor, and these complainants are not in a position which entitles them to challenge the validity of the assignment. If it is vulnerable to attack on the part of any one, it can only be assailed by the state of Kansas, and the state has not seen fit to move in the matter, but has actually granted the assignee of the lease a license to transact business in that state. It is a general rule that when a corporation acquires property without adequate authority, the act being simply ultra vires and not a prohibited act, no one but the state which imposed a limitation on the powers of the grantee can challenge the grant. Chambers v. City of St. Louis, 29 Mo. 543, 576, 577; St. Louis Drug Co. v. Robinson, 81 Mo. 18, 26; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Grant v. Henry Clay Coal Co., 80 Pa. 208; Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317. This rule of law is certainly applicable to the case in hand, and should preclude the complainants from questioning the validity of the assignment whereby the Lanyon Zinc Company acquired a title to the mining lease in question. It is really no concern of these complainants whether the assignment of the lease was valid or otherwise, since neither the state of Kansas nor the assignor has seen fit to challenge it.

For the reasons fully stated in the opinion in chief, I concur in the view that the rental for the year beginning April 10, 1899, and ending April 9, 1900, was paid in due season to preserve all of the rights of the Lanyon Zinc Company in and to the lease in question.