COLBY v. CLEAVER et al.

C. H. COLBY & CO. v. McBIRNEY et al.

(Circuit Court, D. Idaho, C. D.    December 21, 1908.)

Nos. 282, 283.

1. CORPORATIONS (§ 656*)—FOREIGN CORPORATIONS—STATE LAW—FAILURE TO COMPLY—CONTRACTS—VALIDITY—STATUTES.

Rev. St. Idaho 1887, § 2653, as amended by Act March 10, 1903 (Laws 1903, p. 49), requires foreign corporations doing business in the state to comply with certain conditions, and declares that no contract or agreement made in the name of, or for the use or benefit of, a foreign corporation, failing to perform such conditions, can be sued on or enforced in any court of the state by such corporation, nor can such corporation take or hold title to any realty within the state, and that any pretended deed or conveyance of real estate to such corporation shall be absolutely null and void, etc. *Held*, that such section did not make void a mortgage to a foreign corporation not having complied with such conditions, on land in Idaho.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 656.*]

2. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—BUSINESS WITHIN STATE—CONTRACTS—ENFORCEMENT—STATUTES—FEDERAL COURTS—"ANY COURT OF THIS STATE."

Rev. St. Idaho 1887, § 2653, requiring foreign corporations to comply with certain conditions before doing business within the state, and declaring that no contract made in the name or for the use or benefit of a foreign corporation, not having performed such conditions, can be sued on or enforced in "any court of this state" by such corporation, did not preclude a foreign corporation, not having complied with the prescribed

conditions, from resorting to the federal courts in Idaho to enforce a mortgage to it on land in that state.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 661.*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

In Equity.

Hawley, Puckett & Hawley, for complainants.

Morrison & Pence, Hugh E. McElroy, and William B. Davidson, for defendants.

DIETRICH, District Judge. Each of these suits was brought for the purpose of foreclosing a real estate mortgage. Both cases involve the same question, and they have been argued and submitted together. The answers allege that the mortgages were given to the Des Moines Life Insurance Company, a corporation organized under the laws of the state of Iowa, which corporation, at the date of the execution and delivery of the mortgage, was doing business in the state of Idaho without having complied with the provisions of the laws of the state relating to foreign corporations. The complainants present exceptions to those portions of the answers setting forth as a defense the default of the mortgagee in that respect; it being alleged that the complainants are not the actual holders or the owners in good faith of the instruments sued upon, and that the mortgages are subject to all of the defenses which would be available to the defendants as against the mortgagee were it the complainant. The provisions of law relied upon by the defendants is found in section 2653 of the Revised Statutes of Idaho of 1887, as amended by an act of the Legislature of Idaho approved March 10, 1903 (Laws 1903, p. 49). The section, as amended, provides that every corporation not created under the laws of the state of Idaho must, before doing business in the state, file in certain offices a copy of its articles of incorporation, and also a designation of an agent upon whom process, running against the corporation, may be served, and in case of resignation or death of such agent the corporation is required to designate his successor. Then follows this provision:

"No contract or agreement made in the name of, or for the use or benefit of, such corporation, prior to the making of such filings as first herein provided, can be sued upon or be enforced in any court of this state by such corporation, and such corporation cannot take or hold title to any realty within this state prior to making such filings, and any pretended deed or conveyance of real estate to such corporation prior to such filings shall be absolutely null and void; and any and all officers, agents and representatives, of said corporation, or persons claiming to be officers or agents of the same, who shall make or attempt to make any contract or agreement or contract any indebtedness in the name of such corporation or for its use and benefit, before such original filings are made, or while such corporation is in default upon filing a reappointment as hereby provided, shall be jointly and severally, personally liable upon and for all such contracts and agreements as principal contractors."

It is further provided that the statute of limitations shall not run in favor of such corporation while it is in default. The purpose of the

statute is remedial; the clear intention being to require foreign corporations doing business within the state to place within the reach of persons contemplating or having business relations with them certain information with regard to their organization, and also to make them amenable to the process of the state courts in case of any controversy growing out of their business transactions in the state. Certain penalties are imposed for failure to comply with the law. Such corporation is denied the benefit of the statute of limitations while it remains in default. Any of its officers or agents, transacting business for it before it complies with the law, are made personally liable upon its contracts as principals. Conveyances of real estate to it are declared to be absolutely void. As to executory contracts or agreements entered into with such corporation while it is in default, it is declared that they cannot "be sued upon or be enforced in any court of this state by such corporation"; and this is the particular clause of the law which we are now called upon to construe.

It is clear that the Legislature did not intend that such contracts or agreements should be absolutely void; otherwise, they would have been placed in the same category with conveyances of realty. That they are not void is the settled doctrine of the Supreme Court of the state. Valley Lumber & Mfg. Co. v. Nickerson et al., 13 Idaho, 682, 93 Pac. 24; Valley Lumber & Mfg. Co. v. Driessel, 13 Idaho, 662, 93 Pac. 765, 15 L. R. A. (N. S.) 299. Moreover, it is equally clear that it was not the intention of the Legislature to declare them unenforceable against the corporation. The real question is whether such a contract is ever or at all enforceable by or upon behalf of such corporation. The Supreme Court of the state has, in effect, held that it is not a lifeless thing, that the provisions thereof in favor of the corporation are not void, but that, when such contract is sued upon in a state court by the corporation, it shall be just as available to the corporation as it would be had the corporation not been in default at the time of the execution of the contract, unless the defendant, seasonably and in an appropriate manner, makes objection upon the statutory ground. See Valley Lumber & Mfg. Co. v. Nickerson and Valley Lumber & Mfg. Co. v. Driessel, cited supra.

If this view be correct, then such a contract or agreement is a subsisting and binding obligation, not only of the corporation, but of both parties thereto; for, if the undertaking of the one party were lifeless, his failure to raise objection could not operate to breathe life into that which was never animate. The point of pleading and practice thus settled in the state courts is not in question here, for the defendant has raised timely objection; but I have directed attention to this view of the Idaho court for the purpose of more clearly fixing and defining the status of such a contract. If the Legislature had declared such contract, or the portions thereof in favor of the defaulting corporation, to be void, or if it were provided that such contract is not enforceable by or on behalf of such corporation or its assignee, there would be no room for doubt as to the legislative intent; but the provision is that such a contract cannot "be enforced in any court of this state." In interpreting a statute, it is generally the duty of the court to give to each of its

several clauses and phrases some meaning. The exceptions to the rule are rare. The phrase "of this state" does not inject into the enactment either conflict or ambiguity; nor, if retained, is it materially at variance with the remedial purpose of the legislation, and I am unable to discern any valid reason for rejecting it. What significance did the Legislature attach to it? If it is to be given any meaning at all, it must be one of limitation. If it was the intention of the Legislature to provide that such a contract should not be enforceable in any court, why was not the phrase "of this state" omitted? Apt phraseology to express the idea of absolute nonenforceability readily suggests itself, and it is impossible to avoid the conclusion that it was not the intention to declare such a contract wholly unenforceable, but only to deny to the delinquent corporation certain means of enforcement. In other words, the state Legislature intended that the doors of the state tribunals should be closed against a foreign corporation which had transacted business in the state in violation of the state laws. If this view be correct, the clause does not, by its terms, embrace federal courts.

Such seems to be the natural and obvious meaning of the language used by the Legislature. Is such a construction subject to any valid objection? Will it tend to vitiate the statute, or to render it ineffectual in remedying the evil to which it was directed? Is there any inherent probability that the phrase was unadvisedly or inadvertently incorporated and retained in the act? The questions must, I think, be answered in the negative. In speaking of a similar provision of the laws of the state of Kansas, the Circuit Court of Appeals for the Eighth Circuit, in the case of Blodgett et al. v. Lanyon Zinc Company, 120 Fed. 893, 58 C. C. A. 79, decided a few days before the approval of the act under consideration, says:

"The statutes under consideration require foreign corporations seeking to do business in the state of Kansas to comply with the requirements there set forth. For a failure to comply with some of them, they prohibit the company from maintaining actions in the courts of the state of Kansas; but a prohibition of the commencement or of the maintenance of suits is not an inhibition of defending them, and the appellee is the defendant in the suit in hand. Moreover, the inhibition by a state of the maintenance of actions in its courts does not affect the right of a citizen or of a corporation to maintain them in the national courts. The jurisdiction of the federal courts was not conferred, and it cannot be withdrawn or limited, by the legislation of the states. It was granted by the people, through the Constitution and the acts of Congress, and an amendment of the Constitution or an act of Congress is requisite to destroy or diminish it."

Upon the authority of this decision, it was argued at the hearing that it would be incompetent for the state Legislature to enact a law purporting to deprive a foreign corporation of the right to have its controversies tried out in the federal courts, and that, if the act be construed as a prohibition against suing upon or enforcing such contracts in the federal courts, it is to that extent invalid. Without intimating any opinion as to the merits of this contention, or whether it is supported by the language of the Circuit Court of Appeals above quoted, it is sufficient to say that the decisions are somewhat variant upon the point, and that a doubt has more or less commonly prevailed as to just how far a state Legislature may go in limiting the rights of par-

ties when they seek to bring their controversies into the federal courts. It is not improbable, therefore, that in view of this uncertainty the Legislature thought it best to exercise the precaution of limiting the operation of the law to the tribunals over which and concerning the procedure in which it exercised undoubted control. I do not intimate that the Legislature could not have made such contracts nonenforceable in the federal courts. Upon that question I express no opinion. I refer to the prevailing doubt on the subject only for the purpose of illuminating, if possible, the motive and intent of the Legislature in using the phrase under consideration. It may reasonably have been concluded that it would be better to err upon the side of caution, and to enact legislation which, while not as broad as possibly it might be, would be of undoubted validity, and would still be sufficient to effect the object in view; and upon reflection it will appear that limiting the operation of this clause to the state courts does not materially diminish the penalties prescribed for a violation of the law, and still leaves them amply sufficient to compel compliance. It is a matter of familiar knowledge that the federal courts can acquire jurisdiction of comparatively few controversies. The great bulk of litigation must, of necessity, go into and stay in the state courts. It is hardly conceivable that, merely because of the possibility that of its rights of action a few may be of such character and magnitude as to give it access to a federal court, a foreign corporation will, by knowingly failing to comply with the comparatively simple and inexpensive requirements of the state statutes, willfully place itself in a position where it will, in the main, be without any tribunal to which it can resort to enforce its rights against parties with whom it transacts business. Moreover, the corporation is still deprived of the benefit of the statutes of limitations, its agents are liable upon its contracts as principals, and deeds to it are void. Therefore, by giving to the phrase "the courts of this state" its natural and apparent meaning, the penalties to which the defaulting corporation subjects itself are not materially diminished and the efficiency of the act will remain substantially unimpaired. The Legislature having prescribed certain penalties, it is not for the courts to add thereto.

Complainants' exceptions to paragraph 2 of the joint and several answer of Herbert R. Cleaver and F. W. Compton, No. 282, and to paragraph 2 of the joint and several answer of William S. McBirney and F. W. Compton, No. 283, and exceptions 1, 5, and 6 to answer of S. De Cloedt in No. 282, will therefore be allowed. The other exceptions will be denied, and the demurrers to the answers will be overruled.