## HAFFCKE *v.* CLARK.

*(Circuit Court of Appeals, Fourth Circuit. May 25, 1892.)*

### No. 4.

1. PATENTS FOR INVENTIONS—NOVELTY—REFRIGERATORS.

   Letters patent No. 343,369, issued June 8, 1888, to Charles Haffcke, cover the combination in a refrigerator of an ice bowl or rack in the upper part, with open bottom formed of two sets of slats, the upper convex and the lower concave, so arranged that the latter catch and carry off the drip, the ice bowl being detached from the sides of the refrigerator, so as to allow the free circulation of air, together with thin crates of salt set on edge near the ends and at the back of the chamber of the refrigerator, detached from the walls, and held by slats or woven wire, with open interstices, that allow the air coming directly down from the ice free circulation through the salt, producing an automatic circulation of cold, dry, saline atmosphere, having extraordinary and unprecedented efficacy in preserving meats, etc., in sound condition for unusual periods of time. *Held,* that the invention is novel and patentable.

2. SAME—LICENSE TO PARTNERSHIP—EFFECT OF DISSOLUTION.

   A patentee entered into partnership with another for a term of years, unless sooner dissolved by consent, for the purpose of manufacturing the patented article, the patentee contributing the right to manufacture under his letters patent, and the other a sum in cash. *Held,* that on dissolution of the partnership the license expired, and the exclusive right to the patent remained in the patentee.

   46 Fed. Rep. 770, reversed.

Appeal from the Circuit Court of Maryland.

In Equity. Suit by Charles Haffcke against Eugene P. Clark for infringement of claims 4, 5, and 6 of letters patent No. 343,369, issued June 8, 1886, to complainant for an improvement in the art of refrigeration. These claims were held invalid for want of patentable novelty, and the bill dismissed. 46 Fed. Rep. 770. Plaintiff appeals. Reversed.

The specification contains the following statements:

"The third part of the said invention relates to means for absorbing moisture from the air in the frigerating chamber, and diffusing throughout the said

chamber a saline atmosphere, which has antiseptic qualities, and thereby assists in the preservation of meats placed in the chamber."

"E is a hopper, formed of some perforate material, preferably galvanized woven wire, to contain salt; and it may extend partially or entirely around the chamber, as may be preferred. The salt in the hopper, E, absorbs moisture from the air in the chamber, which air becomes strongly saline, and an effective preservative agent. Water resulting from the absorption of moisture by the salt falls to the pan, h, from which it escapes through the pipe, i."

"Further, I am aware that chloride of calcium has been exposed in a frigerating chamber to absorb moisture from the air therein; but this salt will not answer the purpose which I have in view, partly owing to its extreme deliquescence, but principally for the reason that it will not diffuse a saline atmosphere in the chamber. Instead of chloride of calcium, I employ chloride of sodium, which I find is sufficiently deliquescent for all practical purposes; and by its use I am enabled to obtain a saline atmosphere in the chamber, which, in itself, is a preserving agent."

"I disclaim the use of combined ice and salt in a frigerating chamber, as also an exposed body of chloride of calcium."

The claims alleged to be infringed are as follows:

"(4) In combination with a frigerating chamber, an exposed body of chloride of sodium, arranged to absorb moisture from the air in the chamber, and to establish in the said chamber a saline atmosphere, as and for the purpose specified. (5) In combination with a frigerating chamber, a perforate hopper, containing a body of chloride of sodium, arranged to absorb moisture from the air in the chamber, and to establish in the said chamber a saline atmosphere, substantially as and for the purpose specified. (6) In a frigerating chamber, a perforate hopper, containing chloride of sodium, secured to the wall of the said chamber, substantially as and for the purpose specified."

*Price & Steuart*, (*Arthur Steuart*, of counsel,) for appellant.
*Albert S. J. Owens*, for appellee.
Before GOFF, Circuit Judge, and HUGHES, District Judge.

HUGHES, District Judge. Charles Haffcke, the appellant in this case, devised and constructed a refrigerator upon a pattern differing in material particulars from any before used. What one witness says of its capacity for preserving meat and other articles liable to decay, for a long time, in a high degree of atmospheric temperature, is corroborated by numerous others. This witness says, in substance, that he has seen meat in perfect preservation, which has been preserved in one of these refrigerators for six weeks, in the hottest summer weather, in a place where heat was reflected on the refrigerator from the street, under the rays of the summer sun. He testifies that meat kept in this refrigerator at a temperature (inside of its chamber) of 38 to 50 degrees, for six weeks, remains in sweet condition; and that it could not have been kept in an ordinary refrigerator in like condition for more than four or five days. He adds that this result is accomplished by the consumption of much less ice than is ordinarily required for such a purpose. An undertaker testifies that a refrigerator constructed on the same principle, but in casket form, has kept a human corpse for 35 days in a condition as perfect at the end of the period as at the death, in a temperature of 52

degrees; whereas, by the means ordinarily used such a body could not be kept longer than 10 days, with a larger consumption of ice. Other extraordinary instances of like preservation of substances liable to decay are proved to have been accomplished by the Haffcke refrigerator, by testimony which leaves no doubt of the exceptional utility and value of this contrivance for the important purposes for which it is designed.

The form of the structure by which these results are produced is in several respects novel. In the upper part of it is a bowl or rack, with open bottom, for the reception of ice. The bottom is formed of two sets of slats, the upper set convex, the lower concave, so arranged that the melting of the ice drips from the convex into the concave set of slats, and is carried off by the latter. The lower slats or troughs may or may not be filled with salt, at the pleasure of the user. The ice bowl or rack is made of smaller dimensions than that part of the chamber of the refrigerator in which it is placed, in order that between it and the walls of the chamber space may be allowed for the free circulation of air. The receptacle for ice, thus described, differs from those in common use in the fact that it does not touch the walls of the refrigerator, and that its bottom is open for the free descent of air, directly from contact with the ice above, into the chamber below.

The second distinguishing feature of the Haffcke refrigerator consists of contrivances for holding quantities of chloride of sodium or salt in the chamber below the ice, in such manner as to permit the cooled air which descends from the ice to pervade and permeate, with the least possible obstruction, these salt depositories, as well as the open space of the lower chamber. The salt depositories just mentioned, called improperly "hoppers" in the appellant's specifications for the patent, hold the salt in the form which would be a thin slab if it were solid, set on edge, and placed near the sides and the back of the lower chamber of the refrigerator. These slabs of salt are incased each in a crate or hopper resting on a trough lying some inches above the floor of the chamber, sufficiently inclined to carry away any drippings that may occur by liquefaction. The sides of these crates may be of galvanized woven wire, but in practice are of wooden slats, placed far enough apart to permit a free circulation of air through the salt, and close enough together to hold the salt without wasting. An essential part of the design in respect to the crates holding the salt, as well as of the bowl with open bottom, holding the ice, is that a space is left between each of them and the walls of the refrigerator for the unobstructed circulation of air between them and the walls. These salt crates below, and the ice bowl with open bottom above, all so placed as to allow the air from the cooled ice easy automatic circulation through the salt and throughout the refrigerator, are the particular features and distinguishing characteristics of the Haffcke refrigerator. It is proved that by means of the circulation which is chemically and automatically produced by the contrivances thus described, a cold, dry, saline atmosphere is generated, having extraordinary and probably unprecedented efficacy in preserving meats and other articles liable to decay in sound condition for unusual

periods of time. The fact that the time of preservation is thus extended, and the additional fact that the agent or principal agent by which this is done is the cold, dry, saline atmosphere generated by this refrigerator, are proved by a weight and an accumulation of testimony which the appellee has not succeeded in refuting, and which must be accepted by the court as established to its satisfaction.

There can be no doubt that this is an exceptionally efficacious machine. The several devices of which it is made up may not be novel individually; but, as a whole, the structure is unique in design, and extraordinary in effect. That the receptacle for ice is most efficacious when placed in the upper part of the chamber of a refrigerator has long been well known. But the Haffcke ice bowl differs from others in having an open bottom, and in being so constructed that an air space surrounds it on every side, separating it from the walls of the refrigerator. The use of salt in connection with ice as an absorbent of atmospheric humidity, and as a means of lowering the temperature of air, is not new. It is proved in this case that salt has been used for this purpose by being placed in pans at the bottom of the main chambers of refrigerators. It is also proved that in previous patents—the Eber and the Jolley, for instance—it has been used in the walls of refrigerators, the lining separating it from the main chamber being perforated sheets of zinc, or soft and more or less porous wooden boards. But there is no proof that such use of salt in the walls, where it is but very partially accessible to the air, has been efficacious to any pronounced extent. The impression is left by the evidence that the results of such restricted and confined use of salt for the purpose of adding to the preserving qualities of ice, as is indicated by other patents, have been almost, if not quite, nil. The contrivance of Haffcke is as far in advance of these devices in method as it is proved to be in the results attained. His plan is novel, of placing slabs of salt near the ends and at the back of the chamber of the refrigerator, entirely detached from its walls, and held by slats or woven wire, with open interstices, that allow a free circulation of cooled air, coming directly down from contact with the ice, through the salt, and thence into the main preserving chamber itself. No such process has been provided for by any one of the half dozen or more patents that are relied upon on behalf of the appellee as having anticipated the contrivance of Haffcke. There can be no reasonable doubt that the cold, dry, saline atmosphere that is generated in the Haffcke refrigerator is the product of the ice bowl of open slatted bottom, precipitating its cooled air through the slabs of salt standing below, detached from the walls of the chamber, and lined with intersticed slats, which both permit and promote its free circulation.

The question is, whether a contrivance is patentable which is thus novel in the structure of its ice bowl, and thus novel in its means and manner of using chloride of sodium in conjunction with ice to produce a cold, dry, saline atmosphere efficacious for preserving purposes, and surprisingly successful beyond example in accomplishing those purposes. We think that it is. The use of ice as a cooling and of salt as a preserv-

ing agent is as old as human knowledge; but the means and manner of employing them in these functions may be infinite, opening a wide field for experiment and invention; and when a device is fallen upon which produces unprecedented and unequaled results in the use of these familiar agents, that device may possess a very high degree of patentable merit. Moreover, the device itself may be a combination of several elementary devices, each as familiar to the public as the letters of the alphabet; yet the combination of them may, as a whole, possess an extraordinary novelty and utility.

Even if this contrivance of Haffcke be put upon the low plane of a new combination of known mechanical appliances, it falls within the class of patentable machines. In the case of *Harrison* v. *Foundry Co.*, 1 App. Cas. 574, Lord Chancellor CAIRNS said: "A new combination of old parts to produce a known result in a more useful and beneficial way than before attained" is the proper subject of a patent. Sir JAMES BACON, V. C., held to the same effect in *Murray* v. *Clayton*, 7 Ch. App. 577, in saying that "a combination of things not in themselves new, but which combination is perfectly new in the form in which the inventor has cast it, and producing new and more beneficial results, may be the subject of a patent." In *Forbush* v. *Cook*, 2 Fish. Pat. Cas. 668, the court said:

"A new or improved or more economical effect, attributable to the change made by the patentee in the mode of operation of existing machinery, proves that the change has produced a new mode of operation which is the subject-matter of a patent."

And Judge STORY, in *Ryan* v. *Goodwin*, 3 Sum. 514, said, in respect to a combination of materials:

"Each of these ingredients may have been in the most extensive and common use, and some of them may have been combined with other materials for other purposes. But if they have never been combined together in the manner stated in the patent, but the combination is new, then the invention of the combination is patentable. The combination is apparently very simple, but the simplicity of an invention, so far from being an objection to it, may constitute its great excellence and value. Indeed, to produce a great result by very simple means, before unknown or unthought of, is not unfrequently the peculiar character of the very highest class of minds."

These are but annunciations of an elementary principle of patent law manifestly just and sound. It has never been questioned, and it concludes the case at bar on the main question at issue,—that is to say, on the question of anticipation.

As to the question of license, the record shows that appellant and appellee entered into a partnership for five years, unless sooner dissolved by consent, for the purpose of manufacturing the Haffcke refrigerator; Clark, the appellee, putting in a cash fund of $2,000, or so much of the sum as the business should require; and Haffcke "contributing all the rights to manufacture under the letters patent" issued to him for his invention. The contribution of each was exclusively for the purposes of the partnership. The contract confers only a license, inasmuch as it

contains no language declaring or implying that the right of manufacturing the refrigerators should belong, or in any contingency inure, to any other than the partnership to which it was "contributed." It is settled law that a license to use a patent is a personal privilege, which terminates with the life of the individual licensee to which it is granted, unless the grant contains words expressly conferring the power to sell or assign. In the absence of such power, if the licensee be a natural person and dies, or an artificial person or partnership and ceases to exist, the license expires equally in either case. *Oliver* v. *Chemical Co.*, 109 U. S. 75, 3 Sup. Ct. Rep. 61; *Nail Factory* v. *Corning*, 14 How. 193; *Gayler* v. *Wilder*, 10 How. 477, 494. When the partnership of Haffcke & Clark was dissolved, the license itself expired, and the exclusive right to the patent remained in the original patentee, unaffected by the temporary license. The subsequent use of it by Clark was an infringement of the patent. The decree of the court below must be reversed, with costs, and the cause remanded to the circuit court of the United States for the district of Maryland, with a direction to enter a decree for the appellant, and for further proceedings in conformity to the opinion of this court.