### GROTON BRIDGE & MFG. CO. v. AMERICAN BRIDGE CO.

(Circuit Court, N. D. New York. March 21, 1907.)

1. CORPORATIONS—FOREIGN CORPORATIONS—RIGHT TO MAINTAIN SUIT.

Laws N. Y. 1892, p. 1805, c. 687, § 15, provides that no foreign corporation shall do business in the state without first complying with its requirements and procuring a certificate from the Secretary of State, and that no foreign corporation doing business without such certificate shall maintain any action in the state upon any contract made by it in the state until it shall have procured such certificate. Laws N. Y. 1896, p. 856, c. 908, § 181, requires every foreign corporation to pay a license fee for doing business in the state, and provides that no action shall be maintained in any of the courts in the state by such a corporation without a receipt for such license fee. *Held*, in the absence of any decision by the state Court of Appeals so construing them, that neither of such statutes made a contract by a foreign corporation which had not complied therewith void, and that the corporation could maintain an action thereon in a federal court.

**2. PLEADING—SUFFICIENCY OF ALLEGATIONS.**

Mere recitals contained in a pleading, especially those by way of argument or legal conclusion, are not sufficient allegations of fact.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, § 38.]

**3. SAME—COUNTERCLAIM.**

An answer alleging that plaintiff agreed to pay all of its debts and liabilities with all due speed, and that it did not do so, "but allowed certain of said debts and liabilities to remain outstanding and unpaid whereby the defendant was damaged" in a sum stated, states no facts which constitute or show a valid counterclaim for such sum.

**4. SAME.**

A counterclaim must state facts showing a cause of action in favor of the defendant, and against the plaintiff, and, where a number are set up in the same pleading, while it is not necessary to repeat in each all of the facts necessary to make it complete, such facts must be contained in the pleading and be intelligibly referred to.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 294–296.]

At Law. On demurrer to answer.

See 137 Fed. 284.

Jones, McKinney & Steinbrink (Henry R. Follett, of counsel), for plaintiff.

Stetson, Jennings & Russell, for defendant.

RAY, District Judge. The plaintiff, a business corporation of the state of New York, sets out a cause of action against the defendant, a corporation of the state of New Jersey, alleging the sale and delivery to defendant and the acceptance by it of certain contracts at and for the agreed price of $165,631, which sum it agreed to pay the plaintiff therefor; that such sum has been duly demanded, but that no part of same has been paid, except the sum of $130,590.97, leaving a balance due of $35,040.12, with interest from May 12, 1900, for which sum the plaintiff demands judgment. The defendant answers, in its first defense, in substance, admitting the incorporation of the parties as alleged, but alleging that prior to the commencement of the action the plaintiff corporation was voluntarily dissolved, and since then has and now continues in existence for the purpose of winding up its business in the mode and manner provided by the laws of the state of New York; also denying the other allegations of the complaint, except it admits that "about May 12, 1900, by an agreement in writing, copy of which is hereto annexed and made a part hereof marked 'No. 1,' the Groton Bridge & Manufacturing Company sold, assigned, transferred, and set over unto this defendant certain contracts enumerated in said agreement for which the defendant agreed to pay a certain price as provided in said agreement and upon the terms and conditions therein stated," and that thereafter said bill of sale or assignment "No. 1" was modified by a certain supplemental agreement, "copy of which is hereto attached and made a part hereof marked 'No. 2.'" Therefore, without any statement of default or nonperformance by the plaintiff, it alleges the purchase by defendant from plaintiff of certain contracts, and an agreement to pay therefor as stated in the agreements annexed to the answer.

The answer then sets up five defenses and counterclaims denominated as follows:

"For a further and separate defense and a counterclaim to the cause of action set forth in the complaint," or in substance that.

This contract referred to as "No. 1" and "No. 2," as a whole, contains certain guaranties, and in the first counterclaim, also stated as a defense, these writings are referred to as hereto annexed, and a breach thereof is alleged, and that by reason thereof $84,963.74 became and remains due to the defendant from plaintiff. This second defense and first counterclaim also alleges that the sale and transfer of contracts mentioned in the complaint is the same sale and transfer of contracts mentioned in these agreements and this second defense and first counterclaim. This is a good and sufficient allegation of a counterclaim. This is demurred to. The next or second counterclaim for $58,790.59 is demurred to specifically; so of the third counterclaim for $60,702.77. The same is true of the fourth counterclaim for $18,-295.78, and of the fifth for $5,645. The total of the counterclaims is $228,398.08, and defendant demands judgment for the balance due it after deducting complainant's claim which balance is alleged to be $88,501.29. This is the balance for which the defendant demands judgment, not the amount of any one counterclaim, or of all the counterclaims. Hence the demurrer to the counterclaim and separate counterclaims, "that the defendant has not legal capacity to recover upon the counterclaim for $88,501.29 with interest thereon from July 22, 1902, in its answer set forth, in that," etc., does not in terms, or by intelligible reference, refer to anything set forth in the answer. Evidently the pleader intended to refer to all the five counterclaims and raise his objections to all of them, and he takes the balance alleged to be due the defendant after deducting from the total of the counterclaims the sum that would have been due the plaintiff, but for such counterclaims, as the amount of the counterclaim. So treating this part of the demurrer, it must be overruled, as the first counterclaim sets out, as a part thereof, the said agreements "No. 1" and "No. 2," and a breach thereof, etc. It does not appear upon the face of the answer and the counterclaim, or either, that at all times in reference to the work in question defendant was doing business in New York, and that the contracts under and upon which the work was to be done were to be performed and were performed within the state of New York, or that the work referred to was done in the state of New York. A list of the contracts, but not the contracts, is set forth in Schedule A of the agreement, and the answer refers to them as "enumerated" in the agreement. But, even were these statements correct, and even if these facts did appear, there is nothing in the statutes referred to that prohibits or prevents the defendant from recovering on the agreements.

If a foreign corporation does business in the state of New York and earns money, or sells property in the state of New York on credit, or makes, or assumes, a contract entered into by others, to do work in the state of New York, and does the work and earns the money or performs the contracts assumed, it may sue for and recover the money due

in the courts of the United States, even though it has failed to comply with the provisions of section 15 of chapter 687, p. 1805, of the Laws of the state of New York 1892, and the acts amendatory thereof, or with the provisions of section 181, c. 908, p. 856, of the Laws of said state 1896. Nor is it necessary in a suit in the courts of the United States to allege compliance with such sections of such laws, or either of them, in order to state a good cause of action on such claims as are above mentioned, or either of them. The contract was not void or illegal, and the defendant to make its cause of action set out in the counterclaims, if any are set out, is not compelled to rely on an illegal contract. If such were the facts, then defendant could not recover on its counterclaims. It is undoubtedly true that the Legislature of the state of New York may by express provision, in certain cases, deny to a foreign corporation the right or privilege of resort to her courts for the enforcement of such contract rights (Welsbach Co. v. N. G. & E. Co., 96 App. Div. 52, 89 N. Y. Supp. 284, affirmed 180 N. Y. 533, 72 N. E. 1152; but see Fuller & Co. v. Schrenk, 58 App. Div. 222, 224, 68 N. Y. Supp. 781, affirmed 171 N. Y. 671, 64 N. E. 1126, and Parmele Co. v. Haas, 171 N. Y. 579, 581, 64 N. E. 440), but it has no control over the courts of the United States, and, if such a corporation has such a cause of action arising on contract, it may recover in any United States court having jurisdiction in the very teeth of an express statute of the state saying it shall not. The jurisdiction and power of the courts of the United States are determined by the Constitution of the United States and the acts of Congress not in conflict therewith. This, however, is quite a different proposition from that involved when the contract sued upon is illegal and void. Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, where it is held:

"The general rule of law is that a contract made in violation of a statute is void; and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover."

Nor is it a case where the one party, a foreign corporation, is suing another, a domestic corporation, to recover damages for the nonperformance of an agreement made by it in refusing to go on under it and execute its provisions, where the laws of the state where it was made and to be performed forbade the plaintiff corporation to do business in such state until it had complied with certain conditions precedent, and also made the contract to do such business in such state void as to it, and the plaintiff corporation has not complied with the provisions of such state laws. Diamond Glue Company v. United States Glue Company, 187 U. S. 611, 612, 613, 23 Sup. Ct. 206, 47 L. Ed. 328. I do not question the power of a state to provide that all contracts, not affecting interstate commerce, made within and to be performed within its borders by the parties, between one of its citizens, corporation, or individual, and a foreign corporation, shall be void in case such foreign corporation fails to comply with lawful conditions imposed as a prerequisite to its doing business within such state. The question here for decision is: Has the state of New York in or by the statutes referred to made the contract in question illegal or void? If so, and the contract relied upon by the defendant is the same one

under which the accounts were transferred and upon which the plaintiff must rely for recovery, it cannot maintain the action. Diamond Glue Co. v. United States Glue Co., 187 U. S. 614, 23 Sup. Ct. 206, 47 L. Ed. 328; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117. The plaintiff corporation, by those written agreements "No. 1" and "No, 2," sold to defendant corporation certain contracts made by plaintiff corporation with certain parties, and which the defendant corporation assumed and agreed to perform, and as to and in respect to which plaintiff corporation made certain guaranties.

The plaintiff corporation now sues to recover the price agreed to be paid for such contracts by the terms of the agreement; in other words, seeks to enforce its provisions. The defendant corporation says to plaintiff: "You have not performed on your part, but, to our damage, have violated same, and we counterclaim our damage." Thereupon plaintiff corporation says: "You cannot do that, as the contract is void, or nonenforceable by you, as you were not and are not authorized to do business within the state of New York. We could legally sell you the contracts and you could legally purchase and become bound to pay us therefor, but, inasmuch as you could not legally perform or execute the contracts purchased as they called for work to be done in the state of New York, the doing of business in that state which you could not do because of the provisions of the statutes thereof, you cannot counterclaim your damages for our nonperformance, even though you have, in fact, fully performed the contracts we sold you with the other party thereto, and have thus relieved us from the obligation of performance." I do not think this contention is sound. The New York statutes have not said that the one party, the domestic corporation, may enforce such an agreement and recover the consideration agreed to be paid, having wantonly and flagrantly violated its conditions and provisions, and that the other party, the foreign corporation, shall not be able to defend the action or counterclaim its damages in a suit for such consideration because it had not complied with certain statutes imposing conditions precedent to its doing business within the state. While it may be true that defendant here could not have counterclaimed its damages in the state courts, in an action for the consideration, which I doubt, clearly it may in the courts of the United States, for there is no prohibition anywhere against its so doing. By section 181, c. 908, p. 856, Laws N. Y. 1896:

"Every foreign corporation * * * shall pay to the state treasurer, for the use of the state, a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state. * * * No action shall be maintained or recovery had in any of the courts in this state by such foreign corporation without obtaining a receipt for the license fee hereby imposed within thirteen months after beginning such business within the state."

This simply imposes the tax which may be collected in any of the ways provided by law. If the same is not paid, and the receipt obtained, the doors to a remedy on the contract made by such corporation or for the goods sold or labor performed, as the case may be, in the courts of the state of New York, are closed against it, but there is no suggestion that the contract or sale is void or illegal, or that no cause

of action may accrue in its favor, or that no recovery may be had in the courts of other states or in the courts of the United States. The tax is imposed for the privilege of doing business in the state, but this statute does not prohibit the corporation from doing business until the tax is paid. It simply suspends the remedy in the courts of the state until the tax is paid and the receipt obtained.

But section 15 of chapter 687, p. 1805, Laws N. Y. 1892, "an act to amend the general corporation law," is more drastic. This section provides:

"No foreign stock corporation, other than a monied corporation, shall do business in this state without having first procured from the Secretary of State a certificate that it has complied with all the requirements of law to authorize it to do business in this state, and that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state for such or similar business, or, if more than one kind of business, by two or more corporations so incorporated for such kinds of business respectively. The Secretary of State shall deliver such certificate to every such corporation so complying with the requirements of law. * * * No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate."

This does not declare sales or contracts made by the foreign corporation which has not procured such a certificate or complied with the statute void, or even illegal. It forbids doing business until the certificate is obtained, and suspends the remedy in the courts of the state of New York on sales or contracts made or for work done until the certificate is obtained. It has no effect upon the sale or contract made, or upon the remedy in other courts. This section was again amended in 1901 by page 1326, c. 538, § 1, but no change material here was made. So the tax law quoted was amended by chapter 5.8, p. 1364, Laws of 1901, but in no respect material here. The rule of law applicable in such cases is thus stated in 19 Cyc. 1301, viz.:

"Where, however, the contract is not void, but the statute merely prohibits the foreign corporation from maintaining an action thereon in any court of the state, it has been held that the corporation may nevertheless maintain an action in the federal courts since a federal court will not refuse to enforce a valid contract, harmless in itself, which is nonenforceable in the state courts merely on account of noncompliance with the state administrative regulations."

See, also, Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79; Eastern Bldg. Ass'n v. Bedford (C. C.) 88 Fed. 7; Caesar v. Capell (C. C.) 83 Fed. 403; Sullivan v. Beck (C. C.) 79 Fed. 200.

Contracts are not necessarily illegal and void when made by a foreign corporation with a citizen of a state, and are to be performed within the state, for the reason such corporation has not complied with the laws of such state imposing conditions with which it must comply before doing business there. Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317; Bedford v. Eastern Building & Loan Association, 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834. If the laws of the state declare such a contract illegal and void, or forbid the doing of the acts to be done under it, or declare that all contracts made by such a foreign corporation, which has not complied with its laws, within

the state or to be performed there, shall be illegal or void, then such contracts are void. If the highest court of the state has given construction to its statutes fixing the conditions on which a foreign corporation may do business within the state, and held they make all contracts entered into by it without complying with such conditions void, and they do not directly relate to interstate commerce, or discharge citizens from their contract obligations, or are not repugnant to the Constitution and laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each state from encroachment by all others, or those principles of natural justice which forbid condemnation without opportunity for defense (Cable v. U. S. L. I. Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; Bedford v. E. B. & L. A., 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834; Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432; Pembina C. S. M. & M. Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650), then the courts of the United States are bound by and give effect to such construction (Chattanooga National Building & Loan Association v. Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870; Waters-Pierce Oil Company v. Texas, 177 U. S. 28, 42, 43, 20 Sup. Ct. 518, 44 L. Ed. 657; Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759; Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328; Cable v. U. S. Life Ins. Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; N. Y. Life Ins. Co. v. Cravens, 178 U. S. 389, 396, 20 Sup. Ct. 962, 44 L. Ed. 1116), but such contracts are not necessarily void because of noncompliance with such conditions (Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317), and the Court of Appeals of the state of New York has not given such a construction to the statutes referred to. In Beale on Foreign Corporations, § 213, it is said, citing many cases:

"The weight of authority supports the view that contracts made by the foreign corporation within the state before compliance with the statute are not void, and that suit may be brought upon them either by the other party or (after compliance, if that is, as often happens, made a condition of suing) by the corporation. In accordance with this doctrine, it is held that in spite of noncompliance with the statute suit may be brought on the contract in the courts of another state, or in the federal courts. The same doctrine is held as to other transactions. Thus mortgage or trust deeds taken by corporations before complying with the statutes are not void; and on subsequent compliance with the statute are good as from the date of making. The same holds true of other securities taken by a corporation. So titles to land acquired by foreign corporations by purchase are valid; and titles given on foreclosure of mortgages to foreign corporations are likewise valid."

The author also cites cases holding the contrary. It is evident that the question rests largely on the interpretation to be put on the language of the statute itself, and as determined by the highest court of the state where such determination has been had. See cases cited. That the Legislature of a state cannot effectively forbid the bringing of a suit in the federal courts is decided in Bank of B. N. A. v. Barling (C. C.) 44 Fed. 641; Barling v. Bank of B. N. A., 50 Fed. 260, 1 C. C. A. 570; Columbia Wire Co. v. Freeman Wire Co. (C. C.) 71 Fed. 302; Sullivan v. Beck (C. C.) 79 Fed. 200; Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79.

The general demurrer to all the counterclaims is therefore overruled.

Coming to the special grounds of demurrer to the separate counterclaims, there is more difficulty. As stated, the first counterclaim, set forth in paragraphs 3 to 7, inclusive, is good, and the demurrer thereto is overruled. So of the second counterclaim, paragraph 8 to 10, inclusive.

The next, or third, alleged counterclaim, paragraphs 11 and 12, fails to state facts constituting or showing a valid counterclaim. Mere recitals, especially those by way of argument, contained in a pleading, are not sufficient allegations of fact; and this counterclaim, instead of alleging that there were no net profits beyond the guaranty of 15 per cent. nor any profits of 15 per cent. or of any amount, and that there were bad debts, stating the amount, merely recites as a legal conclusion, without alleging facts to support it, that:

"And the total amount of such bad debts was, by this amount so unpaid, in excess of the amount of net profits beyond the guaranty of 15 per cent.; there having been no net profits beyond such guaranty nor any profit of 15 per cent. as guarantied, and that the total amount of such bad debts, to wit, the sum of $60,702.77, thereupon became due from the plaintiff to this defendant, but has never yet been paid, nor any part thereof, although payment has been often demanded."

The fourth alleged counterclaim, paragraphs 13 and 14, is even more deficient. The whole counterclaim reads:

"13. That by said supplemental agreement of June 1, 1900, article third thereof, it is provided as follows: 'Third. The party of the first part [plaintiff] reaffirms its obligations to consider all moneys receivable by it from the bridge company, under this or any other agreement, as a trust fund primarily applicable to the payment and satisfaction of all the debts and liabilities of the party of the first part [plaintiff], and expressly agrees to pay and fully discharge all its debts and liabilities with all due speed'

"14. That the plaintiff did not discharge all its debts and liabilities as agreed but allowed certain of said debts and liabilities to remain outstanding and unpaid whereby the defendant was damaged in the sum of $18,205.78."

There is no statement or allegation giving the amount of debts and liabilities not paid or discharged, and hence there is no foundation or basis stated for the statement as to the damage sustained. Nor is there any allegation that any moneys were received from the bridge company. Hence there was no trust fund with which or from which to pay such debts. From the meager statement of this item of the contract the only fair inference is that such debts were to be paid from such trust fund only. There is no reference to other parts or allegations of the answer or of the contract, and they are not referred to and made a part of the counterclaim by reference thereto.

For the same or similar reasons the fifth, and last, counterclaim, paragraphs 15 and 16, is fatally defective. It reads:

"15. That the plaintiff by said sale under said agreements hereto annexed represented and warranted to the defendant that it, the plaintiff, was the owner of said contracts assigned as aforesaid.

"16. That the plaintiff was not the owner of certain of said contracts which it purported to assign, and thereby the defendant was unable to establish any right in and to said certain contracts and suffered loss and damage in the sum of $5,645.00."

A counterclaim must state facts showing a cause of action in favor of the party alleging it against the plaintiff. In pleading it is not necessary to repeat in each counterclaim all the facts essential to make it complete; but, if this is not done, there must be an intelligible reference to other parts of the same pleading for such facts, and they must be contained in the pleading. And facts not conclusions must be alleged. If a contract and a breach thereof is relied upon, the contract must be stated and a consideration shown.

In Baylies' Code Pleading (1st Ed.) p. 280, § 36, it is said:

"Mode of Pleading a Counterclaim.—A counterclaim should be pleaded in the same manner that the defendant would plead the same facts if stated in a complaint in an action brought by him against the plaintiff. It is in effect a complaint in a cross-action; and the general rules governing the statement of a cause of action in a complaint apply to the statement of the facts constituting a counterclaim."

Among the many cases demonstrating the insufficiency of those counterclaims are the following: Baylies' Code Pl. & Pr. (2d Ed.) 78, §§ 4, 5; Recknagle v. Steinway, 58 App. Div. 352, 69 N. Y. Supp. 132; Booz v. Cleveland Co., 45 App. Div. 593, 61 N. Y. Supp. 407; Wallace v. Jones, 68 App. Div. 191, 74 N. Y. Supp. 116; Bigelow v. Drummond, 42 Misc. Rep. 618, 87 N. Y. Supp. 581; Victory Mfg. Co. v. Beecher, 55 How. Pr. (N. Y.) 193; Landau v. Levy, 1 Abb. Pr. (N. Y.) 376; Sinclair v. Fitch, 3 E. D. Smith (N. Y.) 677; McKenzie v. Fox (N. Y.) 8 N. Y. Supp. 800.

It may be remarked that the court on the trial is entitled to have the pleadings clear, definite, and certain.

The demurrer to the third, fourth, and fifth counterclaims is therefore sustained, but defendant may serve an amended answer within 20 days.