CYCLONE MINING CO. v. BAKER LIGHT & POWER CO. et al.

(Circuit Court, D. Oregon. December 7, 1908.)

No. 3,201.

1. CORPORATIONS (§ 636*)—FOREIGN CORPORATIONS—POWER OF STATE TO EXCLUDE, RESTRICT, OR REGULATE.

　　A state may exclude foreign corporations from doing business therein, or may impose such terms as conditions precedent to the right to do business as it may deem for the interest of the public.

　　[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2505; Dec. Dig. § 636.*

　　Exclusion, regulation, and taxation of foreign corporations, see note to McCanna & Fraser Co. v. Citizens' Trust & Surety Co., 24 C. C. A. 13.]

2. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—RIGHT TO SUE—FAILURE TO COMPLY WITH STATUTE.

　　A corporation of another state operating a mine in Oregon without having complied with Act Or. Feb. 16, 1903 (Laws 1903, p. 44), requiring all foreign corporations before transacting any business in the state to file a declaration of their purpose, pay a filing fee, and appoint an agent to accept service, and providing that until it has done so no foreign corporation shall transact any business within the state nor maintain any action in its courts, cannot maintain an action in either a federal or state court within the state to enforce a contract made in the conduct of its business and in violation of the statute.

　　[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2544; Dec. Dig. § 661.*]

3. CORPORATIONS (§ 659*)—FOREIGN CORPORATIONS—VALIDITY OF CONTRACTS—ESTOPPEL TO CONTEST.

　　A party to a contract made by a foreign corporation doing business in a state without authority and in violation of its statutes is not estopped to plead the invalidity of the contract when sued thereon.

　　[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2561; Dec. Dig. § 659.*]

At Law. On demurrer to plea.

The plaintiff is a private corporation of South Dakota, and is the owner and engaged in the development and operation of mines in Baker county, Or.

On November 23, 1903, it entered into a contract with the defendant, the Baker Gas & Electric Company, a domestic corporation, whereby the latter agreed to construct and equip a pole and wire line from Baker City to the Cyclone Mine, then being operated by the plaintiff, a distance of six miles, and to furnish, after January 1, 1904, certain electrical energy, not exceeding 150 and not less than 30 kilowatts, for the period of one year. Having alleged that this defendant has breached its contract in failing to furnish the quantity of electrical energy specified, and that the other two defendant companies have become bound with the gas and electric company for the performance of such contract, this action is based upon such breach and the binding obligation of all such companies, and judgment for damages is prayed.

The defendants have interposed a plea in abatement of the cause of action. The plea sets up, inter alia, that the contract sued on was entered into and executed in Baker county, state of Oregon; that plaintiff was the owner and engaged in the development and operation of mines in Oregon; that the agreement was for the supplying of certain electrical energy as alleged in the complaint; that the performance of such terms and conditions as by the contract stipulated upon the part of the plaintiff company, and within the intendment of such contract and agreement, would constitute the doing, carrying on, and conducting of business within the state of Oregon, and in further contemplation involved the development and operation of mines and mining property, the employment and discharge of men, and the purchase of material and supplies—a palpable engagement in business enterprise; that, during all times mentioned in the complaint, the plaintiff has failed to file or cause to be filed a written declaration of its desire to engage in business in the state of Oregon, or to otherwise comply with the provisions of law for obtaining a certificate authorizing it to be or to transact business within the state, and has never been so authorized; and prays an abatement of the plaintiff's cause.

To this plea, the plaintiff has interposed a demurrer.

Ernest Dale Owen and W. W. Banks, for plaintiff.
Charles A. Johns, for defendants.

WOLVERTON, District Judge (after stating the facts as above). The sufficiency of the plea in abatement being challenged, the question is presented whether the contract sued on can be enforced, the plaintiff not having complied with the laws of the state of Oregon regulating the doing or transacting of business within the state by foreign corporations. Counsel for plaintiff affirms that it can. Defendants' counsel holds to the opposite view.

It is urged, mainly, that none but the state can take advantage of a noncompliance with its statute regulating the doing of business in the state by foreign corporations, and that one dealing or contracting with a foreign corporation not authorized to do business in a state other than that of its creation is estopped to deny that it is without such authority. A discussion of the primary question as to the effect a noncompliance with a statute regulating the doing of business within the state by a foreign corporation has upon its executory contracts or agreements, entered into while in the transaction of business contrary to such regulations or mandates, will dispose of the case in large measure.

It has long been settled that, by comity of nations and of the states, a corporation may be permitted to contract or to carry on any business, in a state other than that of its creation, that it is authorized by its charter to transact at home, unless it be contrary to the laws or regu-

lations of such other state. It has been said that a corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty." It cannot become a corporation or a citizen of any other sovereignty save that of its creation. If it does business in another state or sovereignty, it does so with the will or consent of the latter, either express or implied. By comity of the states as relates to the subject is meant that implied assent by which a foreign corporation is permitted to carry on its business in states other than that of its creation. As there may be comity of contract between different states and sovereignties, there may be comity of suit, which, without else, without express statutory regulations touching the subject, entitles a suitor to sue in jurisdictions other than his own. So that a foreign corporation may not only contract abroad, but may also sue abroad to enforce its contracts, under the rule of comity, where not superseded by statute or other lawful regulation. A corporation may not transact business abroad, however, unless so permitted by comity or by some regulation of statute of the foreign jurisdiction. A state may withdraw its implied assent through comity, and it may inhibit the doing of such business within its borders absolutely, or it may impose such terms and conditions as it is so disposed, as a prerequisite to the exercise of such privilege. And, where the policy of the state is thus made manifest in this respect through its legislation, the courts will not interpose to defeat its will, and will not give relief where none is intended, and especially where it is designed that such relief should be withheld. These principles are adequately sustained by federal authority. Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274; Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Ducat v. Chicago, 10 Wall. 410, 19 L. Ed. 972; Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297. I need quote but a paragraph from 8 Wall., at page 181:

"The recognition of its (the corporation's) existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

Furthermore, it is declared, in Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 733, 5 Sup. Ct. 739, 741, 28 L. Ed. 1137, that:

"It must be conceded that, if the contract on which the suit was brought was made in violation of a law of the state, it cannot be enforced in any court sitting in the state charged with the interpretation and enforcement of its laws"—citing many authorities in support of the principle.

It would be a vain thing to insist that the federal courts are not bound to the observance of the rule. Are not they in duty bound to enforce state laws, where falling within their cognizance and not

contrary to the federal Constitution or the laws of Congress, as well as the national laws? If it were otherwise, the states and the Union could not well or long coexist.

Section 6 of an act to provide for the licensing of domestic and foreign corporations, and to prescribe terms and conditions upon which foreign corporations may transact business in the state of Oregon, and for other specified purposes, approved February 16, 1903 (Laws 1903, p. 44), provides that:

"Every foreign corporation * * * before transacting business within this state, shall file the declaration and pay the entrance fees hereinafter provided, and shall duly execute and acknowledge a power of attorney, and cause the same to be recorded in the office of the Secretary of State," appointing an attorney in fact with the specific authority named in the statute.

And it is made the duty of such foreign corporation to maintain at all times within the state some qualified person as its attorney in fact; and, in default thereof, it is declared it shall not be entitled to transact any business within the state, or maintain any suit, action, or proceeding in its courts. Section 7 provides that such corporation shall file a written declaration of its desire and purpose to engage in business within the state, enumerating the things the declaration shall specify. And it is further enacted that, upon the presentation of such declaration, the person or persons presenting the same shall pay to the Secretary of State a filing fee of $50, together with the annual license fee, whereupon the Secretary is authorized to issue to the corporation a certificate, which is constituted the legal evidence of its right to begin the transaction of the business specified within the state. And section 9 provides that no domestic or foreign corporation which shall have failed to pay the last annual license fee, or any other fee or tax which shall have become due and payable against it, shall be permitted to maintain any suit, action, or proceeding in any court of justice within the state while such delinquency shall continue.

This legislation, which is an amendment of section 5109 of Bellinger & Cotton's Compilation, strengthens that enactment and renders its interpretation more certain and definite, so that there is no more any cavil as to the intendment of the legislation relative to the time when a foreign corporation shall be authorized and entitled to do business in the state of Oregon. Were it otherwise, the construction of the old section (5109) has received explicit interpretation at the hands of both the state and federal courts, and, further, the effect of a noncompliance with the statute has been most specifically and unmistakably declared. I quote from Commercial Bank v. Sherman, 28 Or. 573, 575, 43 Pac. 658, 659, 52 Am. St. Rep. 811, the last utterance of the Supreme Court of the state upon the subject:

"It must be conceded that the contracts of any of the foreign corporations named in the title of the act of 1864, of which the section referred to is a part, carrying on business here without first having executed and caused to be recorded a power of attorney as required by the statute, are void, and no action can be maintained thereon by the corporation"—citing previous cases determined by the same tribunal.

So it has been held by Judge Deady, in this court, that such a corporation, before complying with said act, had no power to contract or

sue in the state, that the act was prohibitory, and that anything done by the corporation contrary to its mandate was illegal and void. In re Comstock, Fed. Cas. No. 3,078. The doctrine thus announced was later reaffirmed by the distinguished jurist, after a most exhaustive re-examination of the entire subject. Semple v. Bank of British Columbia, Fed. Cas. No. 12,659.

There remains, therefore, no question in these courts as to what is regarded as the proper interpretation of this statute, nor of the effect of noncompliance with its provisions on the part of a foreign corporation presuming to do business within the state. And, were it not for the strenuous insistence of counsel that this case is to be controlled by other principles, I should have felt satisfied, as well as justified, to rest the case here. Further research, however, has resulted in a confirmation of the view thus entertained.

In Wisconsin an act of similar import was adopted August 20, 1897, to become effective September 1, 1898. The Diamond Glue Company, an Illinois corporation, entered into a contract with the United States Glue Company, a Wisconsin corporation, whereby the latter agreed to erect a glue factory to be supervised and operated by the former for the latter for a term of five years from the completion of the plant; the Diamond Company to have the handling and sale of the entire output, guaranteeing payment of such sales, and retaining a percentage on both sales and profits. In a complaint filed by the Diamond Glue Company against the United States Glue Company (C. C.) 103 Fed. 838, other conditions of the contract are enumerated. The United States Company, it is alleged, breached the contract December 2, 1899. The suit was brought in the federal court for the Eastern District of Wisconsin to recover damages for the breach. The question here under consideration was there presented in its fullness, and the court (Seaman, District Judge, sitting) held that (quoting from the headnote of the opinion):

"A statutory enactment within the power of a state, which prohibits the transaction of business therein by foreign corporations except upon compliance with certain conditions, invalidates any contract entered into in violation of the statute, so that the contract cannot be enforced by any court administering the law in such state; and, where the prohibition is plain, this rule governs equally with or without express terms in the statute declaring the invalidity."

This case went to the Supreme Court on writ of error, and was affirmed. 187 U. S. 611, 23 Sup. Ct. 207, 47 L. Ed. 328. In determining the cause, the court says:

"It hardly could be contended that the contract was illegal, on the ground just stated, when it was made (having been entered into prior to the statute invoked taking effect). * * * But it must be taken to have contemplated legal action, and if filing a copy of its charter was a condition precedent of the plaintiff's right to carry out its undertakings, then a promise might be implied on its part to take the necessary steps. But if, when the time came, the plaintiff did not take those steps, the defendant had the legal right to refuse to go on, whether its right be put on the ground of the plaintiff's breach of its implied undertaking or of the illegality of the proposed continuance of the work."

The facts of that case are so nearly parallel with those of this as to render the adjudication with relation thereto controlling here, and about this construction there can scarcely be two opinions.

This cause is to be distinguished from that of Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317, and other cases cited by counsel holding to the doctrine there announced, as there real property had been deeded to the foreign corporation, in disregard of the local Constitution and the statute, and it was held that, if a forfeiture were to be insisted upon, it was the function of the state, and not of the individual, to declare it, and that the question of the corporation's capacity to purchase and hold such property could not be raised collaterally by private persons, unless there was something in the statute expressly or by necessary implication authorizing them to do so. The recent case of Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79, is of this nature, but, for a like reason, is without application. The doctrine might now control the case of Semple v. Bank of British Columbia, supra, but not the preceding case of In re Comstock, nor the cases determined in the Oregon Supreme Court, and manifestly it was not appropriate as an aid to the maintenance of the action in Diamond Glue Co. v. United States Glue Co., supra.

Nor are the defendants estopped, by reason of their contractual relations with the plaintiff, from insisting that the contract is void, and the plaintiff without legal right or capacity to sue for the breach thereof, because, if so estopped, the plaintiff would be permitted to take advantage of its own offending acts done in derogation and even in defiance of the law. It would be a revolting doctrine, fraught with inconceivable deleterious results, if a foreign corporation could come into a state not its own, and there carry on a business in direct defiance of the provisions of law by which it may capacitate itself for the transaction of business therein, and then validate its acts because, forsooth, parties had dealt with it; for but few others have cause for suit except those having contractual relations in some form with such corporations. True, the state might interpose to prevent the further doing of business within its borders, but that is beside the question that an offending thing shall be clothed with ample authority to enforce its contracts anywhere simply because others have contracted with it. Suppose the state, by statute, had utterly inhibited foreign corporations from doing business therein, as it has a perfect right to do, what standing could such corporations acquire by doing business therein nevertheless? What comity would remain for doing such business, and what comity for suing in the courts of the states to enforce their contracts? None whatever. The comity being gone, the right in either aspect is entirely abrogated, and none exists. Can it be that the right may, nevertheless, exist by estoppel? Such a proposition is utterly without persuasive force. In what better situation is a foreign corporation that enters another state without the observance of conditions precedent to its doing business therein? None that I can see. That the estoppel does not exist is sustained by In re Comstock, supra, and the Oregon cases. See, also, 19 Cyc. 1289–1291. While there are cases to the contrary, I am constrained to follow

these. The authorities cited by counsel upon the subject are not in point, as they relate almost wholly to estoppel against domestic corporations, and it is unnecessary to notice them further.

The remaining four objections specified by counsel are but subheads of these two, and must, therefore, fall with them.

It follows that the demurrer to the plea in abatement should be overruled, and such will be the order of the court.